UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL S.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C20-1577-MLP

ORDER

## I.     INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred in evaluating the medical evidence, discounting his testimony and a medical opinion, and determining he can perform work available in significant numbers in the national economy. (Dkt. # 15.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.     BACKGROUND

Plaintiff was born in 1966, has a high school education, and has no past relevant work. AR at 31. Plaintiff was last gainfully employed in 2006. *Id.* at 54.

Plaintiff applied for benefits on March 9, 2017 and alleges disability as of the application date. AR at 16. After the ALJ conducted a hearing in November 2019, the ALJ issued a decision in December 2019 finding Plaintiff not disabled. *Id.* at 16-32, 41-87.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

Step two: Plaintiff has the following severe impairments: degenerative joint disease of the right knee, degenerative disc disease, migraines, obesity, anxiety, personality disorder, and history of substance abuse.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity ("RFC"): Plaintiff can perform simple, light-exertion work, frequently pushing or pulling, with additional postural and environmental limitations. He cannot perform teamwork in close coordination with coworkers. He can handle occasional changes in the work environment. He can have only casual interaction with the public.

Step four: Plaintiff has no past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, he is not disabled.

AR at 16-32.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

## III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial

---

[1] 20 C.F.R. § 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

1    evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a

2    general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

3    ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

4    (cited sources omitted). The Court looks to "the record as a whole to determine whether the error

5    alters the outcome of the case." *Id.*

6         "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

7    relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

8    *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

9    Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

10   testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

11   1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

12   neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

13   *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one

14   rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.    DISCUSSION

### A.    The ALJ Did Not Err in Evaluating the Medical Evidence of Mental Impairments

     Plaintiff contends the ALJ erred by "not properly considering the plaintiff's mental health

impairments" and by "ignoring probative evidence supporting his severe mental health

allegations." (Dkt. # 15 at 4.) Plaintiff cites evidence that, for example, he was anxious, agitated,

and upset, that he missed appointments, and that he lacked insight into his mental health

impairments. AR at 494. Plaintiff concludes by stating the "ALJ did not properly evaluate the

plaintiff's mental health impairments." (Dkt. # 15 at 6.)

1    There is no dispute Plaintiff has severe mental impairments that limit his ability to work.

2    The ALJ found Plaintiff had the severe mental impairments of anxiety and personality disorder.

3    AR at 19. The ALJ accommodated these impairments by limiting Plaintiff to work that required

4    following only "simple instructions" and exercising "simple workplace judgment," with only

5    "occasional changes in the work environment." *Id.* at 22. The ALJ also provided for social

6    interaction limitations, prohibiting "close coordination with coworkers where teamwork is

7    required," and permitting only "casual" public interaction. *Id.*

8    Plaintiff makes no argument that the evidence he points to requires any further restriction

9    in his RFC. Plaintiff fails to show the ALJ harmfully erred in considering the medical evidence.

10   **B.    The ALJ Did Not Err by Discounting Plaintiff's Testimony**

11   Although Plaintiff frames his argument as a challenge to the RFC determination, he

12   appears to be challenging the ALJ's discounting of his testimony. (*See* dkt. # 15 at 6-7.) The ALJ

13   discounted Plaintiff's testimony of severe physical and mental impairments based on

14   inconsistency with the medical evidence, lack of treatment, noncompliance with treatment,

15   conservative treatment, improvement with treatment, inconsistency with his activities, and

16   inconsistency with his own other statements. AR at 23-27.

17   Plaintiff cites supportive medical evidence, such as providers' assessments of chronic

18   migraines and back impairments. This does not, however, address the ALJ's reasons. Conflicts in

19   the record are to be expected, and it is the ALJ's role to resolve them. *Andrews*, 53 F.3d at 1039.

20   Plaintiff challenges some of the ALJ's reasons, for example explaining that a lack of treatment

21   was due to insurance failing to cover all physical therapy he was prescribed. (Dkt. # 15 at 7.)

22   However, Plaintiff fails to address other reasons, in particular inconsistent statements and

23   conflict with activities.

ORDER - 4

For example, although Plaintiff testified he "ha[d]n't played a 90-minute soccer game in years," he told providers he played soccer and ran. AR at 68-69, 563 ("moderately sore from playing soccer"), 832 ("still plays soccer and runs some despite his pain"), 839 ("runs 2x/wk for 1.5 hours; 8-9 miles approx."), 854 ("he did play indoor soccer last night … he didn[']t have discomfort while playing"), 892 ("ran 1 hour last night"). The ALJ found extensive running and playing a vigorous team sport contradicted Plaintiff's testimony that, for example, he must spend "at least one day" in bed after exercising and he has a "hard time being around people." *Id.* at 55, 63. These were clear and convincing reasons to discount Plaintiff's testimony. *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) ("Factors that an ALJ may consider in weighing a claimant's credibility include … inconsistencies in testimony or between testimony and conduct, [and] daily activities….'").

Because the ALJ provided clear and convincing reasons to discount Plaintiff's testimony, inclusion of any erroneous reasons was harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008). The Court concludes the ALJ did not err by discounting Plaintiff's testimony.

### C.     The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

An ALJ may only reject the uncontradicted opinion of an examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if an examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.*

*1.     The ALJ Did Not Err by Discounting the Opinions of Carl C. Epp, Ph.D.*

Dr. Epp examined Plaintiff in March 2016, diagnosed bipolar disorder and anxiety disorder, and opined he would "not be employable on any reasonably continuous basis until his

mood is stabilized." AR at 375. When asked to assess specific work-related abilities, however, Dr. Epp opined only moderate limitations. *Id.* at 376-77. In February 2017, Dr. Epp examined Plaintiff again, diagnosing bipolar disorder, panic disorder, and cocaine use disorder. *Id.* at 535. He opined Plaintiff was unable to complete a normal workday and week and to plan independently, and had marked limitations in performing simple tasks, maintaining punctual attendance, and behaving appropriately. *Id.* at 536.

The ALJ gave Dr. Epp's opinions "less weight" because they were not entirely consistent with his own examination findings and the overall record, and he relied in part on Plaintiff's unreliable self-reports. AR at 29-30. The ALJ also noted Dr. Epp "reviewed little, if any outside medical documentation." *Id.* at 30. However, an ALJ must evaluate *all* medical opinions, including those of physicians who examined a claimant but did not review the entire record. *See* 20 C.F.R. § 416.927(b).

a.      *Reliance on Plaintiff's Self-Reports*

Plaintiff contends Dr. Epp also relied on objective measures such as a mental status exam and clinical interview. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (Clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'"). An ALJ does not provide adequate reasons for rejecting an examining doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports the ultimate opinion with her own observations. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)). In 2016, Dr. Epp observed "grandiosity" in speech and abnormalities in perception, memory, concentration, abstract thought, and insight and judgment. AR at 378. In 2017, Dr. Epp documented "[p]ressured, accusatory" speech,

"[c]avalier, grandiose" attitude and behavior, and abnormalities in memory, concentration, abstract thought, and insight and judgment. *Id.* at 537-38. The ALJ failed to explain how these objective findings were insufficient to support Dr. Epp's opined limitations and did not identify evidence that any of his opinions were based more heavily on Plaintiff's self-reports than on clinical observations. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Reliance on Plaintiff's self-reports was not a specific and legitimate reason to discount Dr. Epp's opinions.

### b.   Conflict with Own Examination Findings

The ALJ found Dr. Epp's finding of high intelligence inconsistent with his opinion of moderate impairment in the ability to perform simple tasks. AR at 29. Dr. Epp's opinions did not rely on cognitive impairments, but on mood impairments. Nothing in the record suggests highly intelligent people cannot be affected by mood disorders.

The ALJ found Dr. Epp did not explain his findings of abnormal memory in 2016. AR at 29-30. In 2017, Dr. Epp noted normal immediate recall but described Plaintiff's difficulty with remembering three words after a delay. *Id.* at 537. In 2016, Dr. Epp simply wrote, "Memory functioning is impaired." *Id.* at 378. While the lack of specificity could be a valid reason to discount any 2016 limitations that were based on memory impairments, the ALJ did not identify any such limitations. And lack of specificity in the 2016 report was not a reason to discount any of Dr. Epp's 2017 opinions.

Conflict with his own examination findings was not a specific and legitimate reason to discount Dr. Epp's opinions.

1

2      c.      *Conflict with the Record*

3          The ALJ cited providers' observations that Plaintiff was in no acute distress, was

4  cooperative, and was alert and oriented. AR at 26. However, Plaintiff's acute condition is not

5  relevant to his chronic impairments. And cooperation, alertness, and orientation are not

6  inconsistent with Dr. Epp's opinions.

7          The ALJ did, however, provide a specific and legitimate reason to discount Dr. Epp's

8  opinions. The ALJ found Dr. Epp's opinions contradicted by evidence that treatment providers

9  consistently found Plaintiff had normal mood, affect, memory, concentration, insight, and

10  judgment. AR at 30. Throughout the relevant period, providers performed psychiatric

11  examinations and found "[n]o mood disorders" as well as "appropriate affect[, with] recent and

12  remote memory intact. … Judgment and insight are within normal limits." AR at 659, 886, 888,

13  890, 892, 894. Treatment providers consistently found normal mood, affect, memory,

14  concentration, insight, and judgment. *See* AR at 451, 458, 580-81, 585, 771, 804, 809. While

15  these mental status examinations were performed during appointments for physical complaints,

16  they were fairly thorough and were performed for the purposes of treatment. The ALJ reasonably

17  concluded these treatment notes, which were consistent with each other and over time, more

18  accurately reflected Plaintiff's condition than Dr. Epp's infrequent examinations. Because Dr.

19  Epp's opinions were based on clinical observations that conflicted with longitudinal

20  observations, the ALJ reasonably found they were not reliable. Inconsistency with objective

21  medical evidence was a specific and legitimate reason for rejecting Dr. Epp's opinions. *See Ford*

22  *v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).

23          The Court concludes the ALJ did not err by discounting Dr. Epp's opinions.

**D.      The ALJ Did Not Err by Relying on Vocational Expert Testimony**

Plaintiff contends error at step five based on an inaccurate RFC and incomplete hypothetical to the vocational expert ("VE"). However, because the Court finds no error in the assessment of the medical evidence and assessed RFC and, therefore, the corresponding hypothetical to the VE, this restating of Plaintiff's argument fails to establish error at step five. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

## V.      CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

Dated this 6th day of August, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 9